WARREN MFG. CO. v. TAIT, Collector of Internal Revenue.

No. 4616.

District Court, D. Maryland.

July 25, 1932.

Frank S. Bright, of Washington, D. C., and Charles G. Baldwin, of Baltimore, Md., for plaintiff.

Simon E. Sobeloff, U. S. Atty., and Chas. G. Page, Asst. U. S. Atty., both of Baltimore, Md., for defendant.

WILLIAM C. COLEMAN, District Judge.

The sole question here presented is whether this court has jurisdiction to entertain the present suit brought by the plaintiff to recover income taxes alleged to have been illegally collected by the government, and is to be determined by the construction to be placed upon section 284 (d) of the Revenue Act of 1926 (26 USCA § 1065 (d). The pertinent language of this section is as follows: "If the commissioner has mailed to the taxpayer a notice of deficiency under section 1048 of this title and if the taxpayer after February 26, 1926, files a petition with the Board of Tax Appeals within the time prescribed in such section, no credit or refund in respect of the tax for the taxable year in respect of which the commissioner has determined the deficiency shall be allowed or made and no suit by the taxpayer for the recovery of any part of such tax shall be instituted in any court except —" and then follow exceptions which admittedly are not applicable to the present case.

The material facts as they appear from the pleadings, and as to which there is no dispute, are that the plaintiff company claimed that the government was in error in the value that it placed upon the company's capital assets as of March 1, 1913, and in finding a gain from the sale of these assets for $287,950 in 1922; that is, the plaintiff company claimed that the true value of certain water power and other water rights on March 1, 1913, was $287,950, and that thus no profit had been derived from their sale in 1922. However, the Commissioner determined a deficiency for that year, and gave the company notice thereof on February 22, 1926, advising it that it might appeal the deficiency determination to the Board of Tax Appeals. This was done on July 13, 1926. However, on May 21, 1927, this appeal was dismissed, upon motion of the company in which the government acquiesced, by the following order of the Board of Tax Appeals:

"This proceeding having been called from the Day Calendar of May 18, 1927 and counsel for the petitioner having filed a motion to dismiss the proceeding, without objection by counsel for the respondent, it is hereby

"Ordered that the motion to dismiss be and the same is hereby granted. The Board is unable from the pleadings to determine the amount of the deficiency as determined by the Commissioner.

"[Signed]     C. M. Trammell

"Member, United States Board of Tax Appeals.

"Dated, Washington, D. C., May 21, 1927."

Some six weeks later, namely, on July 5, 1927, the company paid the amount of the claimed deficiency, namely, $57,352, and thereafter nothing appears to have been done until January 2, 1931, when the company filed with the collector of internal revenue its claim for refund, and, upon its being rejected, the company instituted, on June 30, 1931, the present suit to recover the deficiency, with interest.

Upon the pleadings, the precise question arises upon the government's demurrer to plaintiff's replication; the substance of this demurrer being that section 284 (d) of the Revenue Act of 1926 must be literally construed. On the other hand, the gist of plaintiff's contention is that where, as in the present case, the taxpayer has taken a mere preliminary step by filing an appeal with the Board of Tax Appeals, but before the case is reached by the Board, or anything done by it, he, of his own motion in which the government acquiesces, disposes of the case so far as the Board is concerned, he has done nothing which the statute endeavors to prevent; and that, since he no longer has redress to the Board, he is left without his day in court and is deprived of his just rights, unless he can prosecute the present suit.

The precise question appears to be an original one. At least none of the reported decisions have passed upon it, nor has the court been referred to any unreported decision involving the exact point. There are, however, a large number of decisions interpreting section 284 (d) of the Revenue Act of 1926, which may, for brevity, be divided into three classes. First, those cases where application is made to the courts (either the District Courts or the Court of Claims), before an appeal is taken to the Board of Tax Appeals. See Camp v. U. S. (C. C. A. 4th) 44 F.(2d) 126; Ohio Steel Foundry Co. v. U. S. (Ct. Cl.) 38 F.(2d) 144. Second, those cases where the taxpayer endeavors to sue in court after an appeal taken to the Board of Tax Appeals, and the latter's decision is still pending. See James v. U. S. (Ct. Cl.) 38 F.(2d) 140; James v. U. S. (Ct. Cl.) 38

F.(2d) 143; Brampton Woolen Co. v. Field, 56 F.(2d) 23 (C. C. A. 1). Lastly, those cases where the taxpayer endeavors to sue in court, subsequent to a final adjudication of the matter by the Board of Tax Appeals. See Bindley v. Heiner (D. C. Pa.) 38 F.(2d) 489 (interpreting 26 USCA § 1120 (a), Revenue Law of 1926, § 319 (a), a statute governing estate taxes and in all respects similar to 26 USCA § 1065 (d)); Bankers' Reserve Life Co. v. U. S. (Ct. Cl.) 44 F.(2d) 1000, certiorari denied 283 U. S. 836, 51 S. Ct. 485, 75 L. Ed. 1448; Green v. Mac-Laughlin (D. C.) 55 F.(2d) 423.

Briefly summarized, the result of the three classes of decisions is that, where a suit is instituted in a federal court before the Board of Tax Appeals is petitioned, the court is not ousted of its jurisdiction by such petition, but if, after notice of a deficiency, the taxpayer elects to proceed before the Board of Tax Appeals, then, no matter whether the question is still pending before the Board, or has actually been decided by it, he is precluded from recourse to the courts. See especially Bankers' Reserve Life Co. v. U. S., supra.

The history of, and the primary objects sought to be obtained by the creation of, the Board of Tax Appeals must be understood. The Board was created in 1924. One of its principal objects was to relieve the taxpayer of the hardship of paying a deficiency assessment before contesting the same, which was necessary prior to that time. But also it was intended to relieve the federal courts of the great burden of tax litigation to which they exclusively fell heir, by transferring it to a new agency, which, by its specialized work, would be an expert body better fitted than a court of general jurisdiction to hear and decide tax questions. By the 1924 statute, the taxpayer was permitted immediately to appeal from the deficiency assessment to the Board of Tax Appeals, or, at his option, to pay the claimed amount, and thereafter sue for its refund in the District Court. In 1926, the Board's powers were further extended. It was permitted not only to decide whether the actual deficiency was due or not, but to determine that even a greater deficiency than had been claimed was due. 26 USCA § 1048c; Revenue Act of 1926, § 274 (e). On the other hand, it might find no deficiency to be due, but rather that the taxpayer had made an overpayment, and might order a refund to him. 26 USCA § 1065 (e) and note, Revenue Act 1926, § 284 (e). Also a review of the Board's decision was limited by appeal to the Court of Appeals of the District of Columbia, or to the appropriate Circuit Court of Appeals, subject to the right to petition the Supreme Court for writ of certiorari. 26 USCA § 1226, Revenue Act 1926, § 1003.

A literal interpretation of section 284 (d) of the Act of 1926 (26 USCA § 1065 (d) leaves no ground for doubting the correctness of the government's contention, because that section, as we have seen, provides that if the taxpayer has filed a petition with the Board, no suit shall be instituted by him for the recovery of any part of the tax. In support of this literal construction, the government refers to the report of the Committee on Finance of the Senate respecting this section at the time it was before the Senate for adoption, in which we find the following statement: "But if he [the taxpayer] does elect to file a petition with the board, his entire tax liability for the year in question (except in case of fraud) is finally and completely settled by the decision of the board when it has become final, whether the decision is by findings of fact and opinion, or by dismissal, as in case of lack of prosecution, insufficiency of evidence to sustain the petition, or on the taxpayer's own motion." Report of the Committee on Finance of the Senate, 69th Congress, first session, at page 25.

In addition, the government relies upon the following section of the Act of 1926 (26 USCA § 1217 (d): "A decision of the Board (except a decision dismissing a proceeding for lack of jurisdiction) shall be held to be rendered upon the date that an order specifying the amount of the deficiency is entered in the records of the Board. If the Board dismisses a proceeding for reasons other than lack of jurisdiction and is unable from the record to determine the amount of the deficiency determined by the Commissioner, or if the Board dismisses a proceeding for lack of jurisdiction, an order to that effect shall be entered in the records of the Board, and the decision of the Board shall be held to be rendered upon the date of such entry." Thus this section determines the date upon which certain decisions of the Board shall be considered to have been rendered, and it is to be noted that among such decisions are to be included dismissal of a proceeding when the Board is unable, from the record, to determine the amount of the deficiency fixed by the Commissioner. When we refer to the action taken in the present case by

the Board when dismissing the proceeding, we find the assigned reason to be that the Board was unable from the pleadings to determine the amount of the deficiency so fixed. Therefore, the Board may be said to have rendered a decision within the meaning of this section, which would prevent any subsequent action in the courts. See Camp v. U. S., supra, and Bindley v. Heiner, supra.

As was said by the Board in Capital Building & Loan Association, 12 B. T. A. 349, in holding that the clerk was without authority to dismiss the appeal: "When a proceeding is instituted before this Board there come into being other rights than that of the petitioner to secure a redetermination of his tax liability. The filing of the petition imposes certain restrictions upon the respondent in the assessment and collection of the tax. It may affect the period of limitations on assessment or collection and the right of the Commissioner to thereafter increase the tax. It also creates in the respondent the right to set up a demand that the deficiency should be increased. * * *" This case would seem to indicate that, regardless of any effect that it might have upon the subsequent jurisdiction of federal courts, an appeal to the Board should only be capable of withdrawal by a decision of the Board as such. Accordingly, even aside from section 1217 (d), what was done in the present case would then amount to a decision.

But, even assuming that this was a dismissal, rather than a decision, it is difficult to see just how the Commissioner's assent to a taxpayer's motion to dismiss the proceeding before the Board improves, as the company here contends, his standing before this court. Certainly it is not arguable that, if the government consented to the dismissal of a suit upon which the statute of limitations had run, such consent would allow the taxpayer to successfully overcome the running of the statute in a new action. The most that is arguable is that the taxpayer should not be able to dismiss his appeal to the Board without the acquiescence of the government, but no inference may be drawn from this that such assent now confers upon this court any jurisdiction.

In conclusion, while the result here reached is undoubtedly a harsh one from the point of view of the taxpayer, especially since he would appear no longer to have any redress before the Board, suffice it to say that the remedy lies with the legislative body, Congress, and not with the courts. Accordingly, the government's demurrer must be sustained, with the result that the proceeding must be dismissed for lack of jurisdiction.